Mr. Davis, we are ready when you are ready. Thank you, Your Honor. Hello, Your Honors, and may it please the court. My name is Gary Davis, and I represent the defendant, Ms. Julianne Logsdon. Ms. Logsdon was convicted of making a false statement during an interview with an ATF agent during the course of an arson investigation. Ms. Logsdon was interviewed three days after the arson fire. During that interview, she claimed that she entered a mail mart, which is a business in the place of the fire, and turned off an alarm at a specific date and time when she knew she did not enter the mail mart and did not turn off the alarm at that time. That is the language in the indictment. It is the language supporting the factual basis of her plea in district court. The statement does not, on itself, involve an arson. As a result, there was a sentencing hearing due to the objections and the disagreements of trial counsel on the application of the arson cross-reference in Ms. Logsdon's pre-sentence report. Presumably, that sentencing hearing was held for the government to get the opportunity to establish sufficient relevant conduct to time Ms. Logsdon's statement, her false statement to the ATF agent, to the arson, such that application of the arson cross-reference was proper in Section 2B.1.1. Our position on appeal, I think, is very narrow, and that is whether or not Ms. Logsdon's statement alone and without more triggers the cross-reference. And more specifically, was there enough evidence presented at Ms. Logsdon's sentencing hearing to trigger the cross-reference? I think even the government can agree, because they don't dispute it in their response brief, and we talk about it in our opening brief, that the indictment does not reference an arson at all. And practically, that is the reason why the government chose to proceed, obviously, because of the objections of the trial counsel at the district court level, because the indictment and the plea colloquy do not invoke the cross-reference. And so the analysis then starts at relevant conduct, and what is it? And it is why we spent so much time on that analysis in our opening brief. It's not a fool's errand. It is important, because that's the road to how we get from point A, the offense conduct or the charge conduct, to point B, is that offense conduct sufficient to apply the cross-reference? That's important. The language is whether the offense involved arson, right? Correct. Yes, Your Honor. Involved is a pretty broad word, isn't it? Involved is a pretty broad word, but I think in this case, the court, the district court, and the government have conflated the acts of Ms. Logsdon, the charged acts and the charged conduct of Ms. Logsdon, and the actions taken by the government. When you follow the path of the analysis of what relevant conduct is and what the definition of involved is, her statements do not get you to those statements involving arson. The relevant conduct analysis, I think, is pretty straightforward. Every district court judge is eminently aware of it. I know that this panel is eminently aware of the definition of relevant conduct and how it relates to acts of defendants and what their offense conduct involves. And here, the government states or stated at the sentencing hearing, and this is important, that the cross-reference was applicable because Ms. Logsdon's statements were made during the course of an arson investigation. I think, Your Honor, and our position is that is incorrect. It is incorrect because an arson investigation is not an act of the defendant. And relevant conduct is clearly about tying acts of the defendant together. It's not about, we don't think our position is, bootstrapping acts of the government into defendants' offense conduct. And I think that the government tacitly admits this fact in its brief when it talks about certain, what we believe to be made-up facts with regard to this case. That is that they're inferring that Ms. Logsdon made these statements for certain reasons. Well, the government, obviously, and the court is allowed to make reasonable inferences from facts that are on the record. But these, we believe, are unreasonable inferences from made-up facts because there is no evidence that Ms. Logsdon made these statements as a part of some arson conspiracy. There is no evidence that Ms. Logsdon made these statements because she knew the person who disabled the alarm and conspired with them in lying to the ATF agent. Well, the word, as has already been pointed out, is related to, there can be no doubt that, even though it was the government's investigation that led to this questioning of her, the questioning related to an arson. There's no doubt about that. We're not disputing that, Your Honor. We're not disputing the fact that the investigation was related to an arson. And her conduct, her statements, were clearly related to the government's questions. And the government's questions were clearly related to the arson. So even though you've got a double layer of related to's, they certainly hook up, don't they, that that relates to, then, the arson? No, Your Honor. We think that's too attenuated. I mean, the fact of the matter is, on its face, her offense conduct is merely stating that she entered a business at a date and time when, in fact, she knew she did not enter the business at that date and time. That's her offense conduct. The government has stated, and essentially the district court has agreed in what we believe to be an error, that solely because the government had chosen to take this investigation on as an arson investigation, and that Ms. Longston made the statement during the course of that arson investigation that the cross-reference applies. Go ahead. No, no, you go ahead, please. Well, she knew that the false statement that she made was to someone investigating arson, correct? Yes, ma'am, Your Honor. And so does that affect in any way whether her offense involved arson? No. Well, here's the thing. Based on the definition of what involved in is and the sentencing guidelines and the commentary on what relevant conduct is, it takes more than from the defendant, it takes a more manifested act to tie the arson to Ms. Longston's statements. And, you know, there's not really a case on point for this particular type of application in the Tenth Circuit. There is a case in the Ninth Circuit. It's the Johnson case, which we referenced in our opening brief. And in that case, the court, the Ninth Circuit, did find that Johnson's, Defendant Johnson's statement, which was made to an investigator after an arson, was part of a continuing course of conduct and that it was false in order to cover up the arson itself. That was committed by the defendant. And recall relevant conduct also includes conduct by the defendant attempting to avoid detection or responsibility. And so the Ninth Circuit... As I read Johnson, it is true that in that case, the facts are that there was evidence, clear and convincing evidence, that the person who made the false statement also committed the arson. But I don't see that the decision somehow ties that as a requirement to be involved in arson. Well, I think that it does, Your Honor, because in the Johnson case, Johnson makes the statement subsequent to the arson. And those statements themselves were about the arson. And for the purpose of throwing investigators, you know, off the trail. And so Mr. Johnson's statements involved the substantive crime of arson, in that it was a series of ongoing conduct by the defendant in that case related to the arson. And so I think that is the distinction between Mr. Johnson's case, where the Ninth Circuit did find proper application of the arson cross-reference, and this case, because mislodged statements are not connected to the arson in any way, other than the fact... Can I... I mean, they're trying to find out... They are connected to the arson. They're trying to figure out what occurred, and it's important to know whether the fire alarm had been turned on or turned off, and when. Right? I mean, that's part of the investigation into who committed the arson. Well, Your Honor, I disagree that the statement itself is connected to the arson. I agree that the statement was made during the course of an arson investigation, and that is the, I think, distinction, and where we draw the line in our brief. We're not disputing the fact that it is an arson. What we're saying is... And the reason, and I think this is no more illustrative than the fact that the government chose to have a sentencing hearing for this reason, because the statement on its face does not involve arson, like it did in the Johnson case. The statement on its face doesn't implicate mislodged in the substantive crime of arson in any shape, form, or fashion. So would your position be different if the question had been not simply, when did you turn off the alarm, but rather if the alarm was turned off at this particular time, might it not have allowed or explained that at that time somebody was entering the building to commit arson? And had the word arson in it, would you agree it would be okay? I mean, is that the distinction you're drawing?  The distinction I'm drawing is that our position is that the statement itself has to be connected. That analysis in the sentencing guidelines for relevant conduct has to connect mislodged in statement substantively to the arson. That's my question. If the ATF person had said somebody turned off this alarm, it was turned off at a time that would have enabled somebody to come in and commit that arson. Tell us if you turned it off and when. Well, if if the ATF agent had limited or qualified the question with respect to the timing of the arson, and then mislodged in answered the question falsely as it may have been within that qualification in attempt to avoid detection. Right. For her part in the arson and the evidence on the record was sufficient to support that. Then, yeah, absolutely. A lot of those ifs could connect, I think. But that's not what we have here in this case. And I see I have about a minute left. If I can save that time for rebuttal. All right. Ms. Epperle, you have to unmute yourself. My name is Linda Epperle, Your Honor. May it please the court. And I represent the United States. First of all, I would like to address the claim by opposing counsel that, you know, this statement was just that she entered a building and that that's not harmful. The proof indicates that she said she entered the building to turn off an alarm. No, I entered the building to try to find her cell phone. That was the reason. That was a harmless, innocuous reason. Turning off the alarm was not a reason for entering the building. It was a simple cause or it was a requirement in order to enter the building. But it wasn't the reason she entered it, according to her testimony. You're absolutely right. I apologize. She went there to check on her ATM card. But in order to go into the business, she had to unset the alarm. She believed she reset it. The problem is that the alarm was she said that she reset the alarm at 933. She actually it was shown it was using her phone from Tulsa at 945. Even she admitted it. Well, once again, it wasn't shown that she used her phone. It was simply shown that her phone was used. Right. Well, that's correct. I mean, she even admitted. She admitted. She admitted that she made a phone call in Tulsa at that time. She admitted that she had gone on to Tulsa with her husband. She admitted that it was completely unreasonable to be able to make a phone call in Tulsa and have such a short time earlier been in Tahlequah Mail Mart. But she still insisted that she was the one who went in at those times and turned off the alarm. And then she ceased to answer questions after after that point. I believe Judge Bell hit the nail on the head in saying that the whole point here is that. He turned off the alarm or said she turned off the alarm because of an arson. Arson was the crime that they were attempting, that she was attempting to cover up or someone's participation in that arson. Arson is obviously involved under the expansive ruling in Smith in this false statement. She didn't turn off the alarm to allow murder. She didn't turn off the alarm for an art theft or a drug deal. She turned it off or said she turned it off, knowing that the officers were investigating an arson at that business that occurred that evening. So is it your is it your position that this enhancement or this guideline provision applies to any false statement made during an arson investigation, no matter how innocuous? Well, yes, I believe that it does, because that would under the expansive definition given in Smith, that would be involved in here. It's involved in to the extent that it relates and invokes the provisions of 1B1.3A1B covering those actions that are taken in the course of attempting to avoid detection or responsibility for that offense. Here, the theory would be that she engaged in a jointly undertaken criminal enterprise with Amanda Ellis, who was the owner of Mail Mart, who did plead guilty. She'd known her for eight years, worked for her for eight years. Amanda Ellis did plead guilty to a similar false statement charge. The cross-reference was applied, and she eventually cooperated, although she was still somewhat deceptive. And she's paying restitution for the false statement that she made, restitution that was not sought in this case. Would you be different if the investigator had come in and said, we are just investigating some potential criminal activity? And did you enter the building and did you turn off the alarm and so forth? And she said, well, what are you investigating? And they say, well, it doesn't matter. We just want to know if you did this. Would the result be different in that case? Even though it would be the same. I mean, then you're looking at the involving arson, not from her perspective at all, but from the government's. Although I guess you could try to say it is from her perspective because the charges we're bringing are worried about implied that she knew about it. But I don't know. You don't think it makes a difference. That answers my question. Thank you. That's enough. Let me while we're stopped. You referred to Smith and Smith. The Supreme Court was interpreting the phrase involved in not. Involved involved. So is there a difference? I don't think that this court has found there to be a difference in the horse householder case in 2016. In that case, in looking at a forfeiture and whether or not a firearm. Householders and involved in. So it would fall squarely under Smith. Right. It was whether it was involved in a crime of possessing. Right. Yes, it was. Yes, it was. And I see no I see no reason to draw a distinction between it involved arson or it was involved in arson. If you give the word involved an expansive meaning, as the Supreme Court has indicated, and several other courts have also indicated that it should be interpreted that way. This seems a clear case where the judge properly looked at. The evidence determined that this statement was involved in arson. It was not just that she entered the business. She alleged she entered the business for a purpose. That purpose was related to an arson that had happened at the building. I would dispute the allegation that the government had a hearing in this case because we knew the link was lacking in Ellis. There was no such hearing and the cross reference was still applied. If there are no further questions, we would ask the court to affirm. Thank you, Mr. Davis. You have some rebuttal time. You're Mr. Davis. You're muted. My apologies, Your Honor. So briefly, the government continues to state that Miss Lawson entered the mailmark for the purposes of arson. There's no evidence of that in the record. Absolutely none. It's completely void that her entering or not entering that mailmark or even her statement to the to the ATF agent had anything to do with the arson. And also, I want to briefly just touch upon the Smith case and and the definition of involved in the court. Smith case was dealing with the situation on firearm use in what it was determining when that use not dealing with a firearm for its built purposes for shooting was involved in a crime. And it talks about making a false statement in the transfer of a firearm and how bad a firearm can be involved in in in that circumstance. I see my time has has expired. Can I just finish this thought, Your Honor? Yes. And in Smith, the Supreme Court specifically stated involved in for the purposes of firearm did cover that because the misstatement with regard to transfer, for example, the example that the court used made the firearm involved in the substantive crime, made the misstatement involved in the substantive crime of the transfer of the firearm. And so in every case, whether it's Smith or whether it's Johnson, the statements or the misstatements or the false statements that the defendant makes that subjects them to the cross reference has some materiality of the substantive underlying crime. Your Honor. Thank you. Thank you, counsel. We will take this matter under advisement. You're excused.